L. A. SHUFORD and others v. COMMISSIONERS OF LINCOLN
COUNTY and M. THORNBURG v. COMMISSIONERS OF GAS-
TON COUNTY.

### Taxation—Stock Law.

1. A tax levied only upon land under the provisions of the "stock law"
(act 1879, ch. 135) is not within the constitutional prohibition as to
uniformity of taxation, and hence the assent of the qualified voters of
the district affected, is not necessary; and this, even though the act
of the legislature styles it a *tax*.

2. It is regarded as a local assessment, and made with reference to spe-
cial benefits derived from the property assessed, from the expenditure;
while taxes are public burdens, imposed as burdens, for the purpose
of general revenue.

APPLICATION for an injunction heard at Spring Term
1881, of LINCOLN Superior Court, before *Eure, J.*

The injunction was refused and the plaintiffs appealed.

A similar application was made in *Thornburg* v. *Commis-
sioners of Gaston County,* at chambers on the 8th of November,
1881, before *Avery, J.,* and refused.

*Messrs. Hoke & Hoke,* and *Battle & Mordecai,* for plaintiffs.
*Messrs. Schenck & Cobb,* for defendants.

RUFFIN, J.   Shuford *v.* Commissioners of Lincoln county,
and Thornburg *v.* Commissioners of Gaston county:

These two actions have a common object—it being to en-
join the collection of certain rates imposed, in the first
case by the commissioners of Lincoln county, and in the
second, by those of Gaston county, for the purpose of
erecting fences around certain townships within those coun-
ties, under the act of 1879, ch. 135, known as the "Stock
Law."

It is instituted by the plaintiffs:

1. That inasmuch as that statute made the adoption of its provisions to depend upon the concurrence of "*a majority of the votes cast,*" at an election held for the purpose of ascertaining the will of the citizens affected in regard thereto, it was in violation of the 7th section of article seven of the state constitution, which declares that no tax shall be levied by any county or other municipal corporation, unless sanctioned "*by a vote of the majority of the qualified voters therein.*"

2. That as the tax was directed to be levied only upon the lands situate in the townships, it was in violation of the 9th section of the same article, which says that all taxes levied by any such corporation "shall be uniform and *ad valorem* upon all property in the same."

This latter proposition has already received the attention of the court at this term, in the case of *Cain* v. *Commissioners, ante,* 8, and after elaborate argument, and much thought bestowed upon it, the conclusion was reached that while rates, like these now under consideration, might in some sense be rightly denominated "taxes," still they are of a peculiar nature and do not fall within the meaning of that term, as employed in the constitution and statutes generally; that in its common acceptation the term applies only to such impositions as are levied for public revenue and the general purposes of government, and not to such assessments as are intended to defray the expenses of improvements, local in their nature.

Impositions of both sorts are alike, taxes, in that, the only power to levy them must be derived from the authority of the legislature. But still they constitute two distinct classes—those levied for carrying on the government and meeting such exigencies as are common to the whole people of the state, whether levied directly by the state authority, or through the municipal corporations by means of which the state exerts its powers, falling under the consti-

tutional prohibition; while those assessed upon property supposed to be benefitted by some improvement, which though deemed expedient for the public are nevertheless undertaken for the especial benefit of a particular locality, are committed to the unrestrained discretion of the law-making power of the state, only, as I take it, that the burden imposed on each citizen's property must be in proportion to the advantage it may derive therefrom.

As shown by the authorities cited by the Chief Justice in the opinion delivered in *Cain* v. *Commissioners*, the point has been under the consideration of the courts in several of the states, whose constitutions contain restrictions resem-. bling our own, and almost without exception they have recognized the distinction suggested. Indeed, it was adopted by us more out of consideration for what seemed to us to be the overwhelming weight of authority, than as a deduction or conviction of our own.

In addition to the authorities there adduced, we think it not amiss to call attention to the following adjudications as bearing on the point.

In *Palmer* v. *Stamph.*, 29 Ind., 330, the supreme court of that state held that a provision of their constitution which directed the legislature " to prescribe by law for a uniform and equal rate of taxation, and for an equal and just valuation for taxation of all property, real and personal, " did not preclude a law, whereby a special assessment was laid upon a specific property, the value of which was intended to be advanced by a local improvement;" and to the same effect was the decision of the court of appeals of Virginia, in *Norfolk* v. *Ellis*, 26 Gratt., 224—the constitution of that state declaring that "*taxation* shall be equal and uniform throughout the state, and that all property shall be taxed in proportion to its value."

In *Presbyterian Church* v. *The City of Wayne*, 36 Ind., 338, it was held that a clause in their state constitution,

which declared that no property used for religious purposes should be liable to be *taxed*, did not exempt such property from a local assessment for the construction of a sewer in its vicinity—the court remarking that *"taxes* are public burthens imposed, as burthens, for the purpose of general revenue ; *assessments* are made with reference to special benefit derived by the property assessed from the expenditure."

In *City of Bridgeport* v. *Railroad*, 36 Conn., 255, it was held that an assessment for benefits specially conferred by the laying out a highway, while strictly speaking *a tax*, was not so in the common acceptation of the term, and was not within the meaning of a statute, which in consideration of a certain tax paid by railroads in the state, exempted them from all other *taxation*.

In *Wallace* v. *Shelton*, 14 La., (Ann.) 498, where the constitution provided that *taxes* must be levied on all property in proportion to its value, it was decided that an act of the legislature providing for an assessment per acre by commissioners upon all the alluvial lands within certain parishes, for the purpose of making and repairing levees, did not come within the meaning of the constitution—and this, though in the act itself it was styled *"a tax."*

The very same distinction was taken by the English court of exchequer, in *Guardians of the Poor* v. *The Commissioners of Bedford*, 7 Exch., 777, where a provision in the statute of 34 Geo. III, to the effect that certain buildings erected for the use of the poor of the town, should be free from all parochial and parliamentary taxes, was held not to exempt them from an assessment for local improvements— the taxes mentioned being construed to mean such as were levied for the benefit of the whole kingdom.

This also, as it seems to us, effectually disposes of the other exception taken for the plaintiffs. If such assessments are not within the constitutional prohibition as to the uniformity of taxation, there can be no pretense for holding

them to be within the restriction which requires the assent of the qualified voters of the districts affected thereby. If our construction be the true one, they are altogether omitted from the constitution, and as tending to give some support to our conclusion, it is to be observed that in the constitutions of several of the states, a uniformity of *assessments* as well as of *taxes* is provided for in express terms.

No error. ·                                    Affirmed.