Civil action to recover on a judgment in favor of plaintiff against defendant road for $2,500 damages for negligent killing of plaintiff's intestate by defendant's lessee, the Southern Railway Company, heard on demurrer to the answer of defendant.
From the facts as presented in the pleadings, it appears that on 3 February, 1920, plaintiff's intestate was killed by negligence of Southern Railroad, its employees and agents while holding the defendant's railroad under a lease of defendant company, and operating same under and by virtue of defendant's franchise. That plaintiff having duly qualified as administrator of deceased, instituted his action against defendant for said alleged negligent killing, and filed his complaint therein, setting forth the occurrence in detail and the facts tending to impute liability therefor to defendant. Defendant answered, denying any negligence on the part of its lessee as proximate cause of intestate's death, and alleging further that at the time of said killing defendant's road was not in possession of or being operated by its lessee, but was under the control and management of the Government of the United States, through the Director General, etc., and pursuant to the Federal legislation appertaining to the subject and the administrative orders made under and by virtue of same.
On these averments the cause was submitted to the jury at March Term, 1921, of said court, and verdict rendered on the following issues:
"1. Was plaintiff's intestate killed by the negligence of defendant, as alleged in the complaint? Answer: `Yes.'
"2. What damages, if any, is plaintiff entitled to recover? Answer: `$2,500.'"
Judgment on the verdict for plaintiff. Defendant excepted and prayed an appeal, which was never perfected or further prosecuted. That said judgment not having been paid, plaintiff instituted the present action to March Term, 1922, and filed complaint therein, averring the existence of said judgment, that same remains wholly unpaid, and demanding judgment for the $2,500, and interest. To this complaint defendant answered admitting the recovery and existence of the judgment sued on, but alleged that same was not a valid or binding judgment because it was obtained for the wrongful death of intestate caused by the negligence of the employees and agents of the Government of the United States while the properties of defendants were being operated and controlled by the Director General of Railroads under and by virtue of the acts of Congress and the orders of the President of the United States, and for that reason said judgment is illegal and void. Defendant alleged further, in effect, that this alleged negligent killing took place when its road and all equipment, etc., was in control and charge of the Government under the acts of Congress and orders aforesaid, and at a *Page 445 
time when one of the agents and employees, etc., of defendant or its lessees were engaged in operating said road or in any way responsible for said death, and to hold it liable for such an injury under such circumstances would be to take defendant's property without due process of law, etc. And in supplemental answer, filed by leave of court, alleged further that the present action on the judgment in behalf of defendant was in the endeavor to evade in some way the provision contained in the act of Congress known as the Transportation Act of 1920, sec. 206 (g), in terms as follows:
"No execution or process, other than on a judgment recovered by the United States against a carrier, shall be levied upon the property of any carrier where the cause of action on account of which the judgment was obtained grew out of the possession, use, control, or operation of any railroad or system of transportation by the President under Federal control."
And defendants pleads further provisions of said Transportation Act in bar of recovery on the judgment.
To which said answer plaintiff files demurrer in terms as follows: "Comes now the plaintiff and demurs to the answer of defendant herein, upon the ground that the matters and things alleged in said answer were set up, or might have been set up, in the defense in the original action, and this judgment sued upon is res adjudicata as to all such matters; also plaintiff moves for judgment upon the pleadings."
There was judgment sustaining demurrer in terms as follows: "This cause coming on to be heard upon plaintiff's demurrer to the answer of defendant, it is now considered and adjudged by the court that said demurrer be and the same is hereby sustained. It is further considered and adjudged by the court that the plaintiff have and recover of defendant $2,500, with interest thereon from 21 March, 1921, and the further sum of $95.65, with interest from same date, and the cost of this action to be taxed."
Defendant excepted and appealed.
It appears from an inspection of the record that plaintiff holds a judgment of the Superior Court against defendant for $2,500 damages, and costs, purporting to be a final determination of the rights of these litigants, unchallenged by appeal or other procedure in the cause wherein the same was entered. The court being with us one of general jurisdiction, every reasonable intendment is presumed in favor of the validity of its judgment and the same may not be impeached *Page 446 
collaterally except for lack of jurisdiction of the cause or the parties, apparent on the face of the record. Caviness v. Hunt, 180 N.C. 384;Stocks v. Stocks, 179 N.C. 288; Moore v. Packer, 174 N.C. 665; Settlev. Settle, 141 N.C. 553-573; Carter v. Rountree, 109 N.C. 29; Doyle v.Brown, 72 N.C. 393; Harvey v. Tyler, 69 U.S. 328-343; 11 Cyc., p. 691.
And in case jurisdiction, has attached, the binding force and conclusiveness of such judgment is in no way impaired because the same has been erroneously allowed, though the error may be undoubted and apparent on the face of the record. McNitt v. Turner, 83 U.S. 352, 366; Cooper v.Reynolds, 77 U.S. at p. 316; Grignon's Lessee v. Astor et al., 2 Howard U.S. 319 and 340; Weeks v. McPhail, 128 N.C. 130; Carter v. Rountree, 109 N.C. supra; Stillman v. Williams, 91 N.C. 483-486; McKee v. Angel,90 N.C. 60; Jennings v. Stafford, 23 N.C. 404; Franklin Union No. 4 v.People, 220 Ill. 355.
In McNitt v. Turner, supra, at p. 366, the correct principle is stated as follows: "It is an axiomatic proposition that when jurisdiction has attached, whatever errors may subsequently occur in its exercise, the proceeding being coram judice, can be impeached collaterally only for fraud. In all other respects it is as conclusive as if it were irreversible in a proceeding for error. The order of sale before us is within this rule. Grignon's Lessee v. Astor et al., supra, was, like this, a case of a sale by an administrator. In that case this Court said: "The purchaser under it is not bound to look beyond the decree. If there is error in it of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of the purchaser is as much protected as if the adjudication would stand the test of a writ of error; and so where an appeal is given, but not taken, in the time allowed by law.'"
And in Stillman v. Williams, 91 N.C. supra, at p. 486, Merrimon, J., delivering the opinion, said: "Although a judgment be irregular or erroneous, yet if the court granting it had jurisdiction of the parties and the subject-matter, it cannot be attacked collaterally for such irregularity or error."
We do not understand that appellant desires to question the general principles to which we have referred, but it is insisted that there is a lack of jurisdiction of the subject-matter in case of the judgment here sued on by reason of the acts of Congress and executive and administrative orders pursuant thereto, by which this and other roads in continental United States were taken over by the Government as a necessary step in the successful prosecution of the recent war, and particularly *Page 447 
by reason of General Order No. 50, in which the Director General in charge and control of the roads under these legislative and executive orders, provided, among other things: "That actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contracts binding upon the Director General of Railroads, claims for death or injury to the person or for loss or damage to property arising since 31 December, 1917, and growing out of the possession, use, and control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceedings but for Federal control might have been brought against the carrier company shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise, etc.
"Second, pleadings in all such actions at law, etc., now pending against the carrier company for a cause of action arising since 31 December, 1917, based upon a cause of action arising out of the operation, etc., may on application be amended by substituting the Director General for the carrier company as party defendant and dismissing the carrier."
Speaking in general terms, jurisdiction has been defined as the power "lawfully conferred upon a court to deal with the general subject involved in the litigation," and as to the subject-matter is said to exist wherever the court has jurisdiction of the class of cases to which the particular case belongs. Cooper v. Reynolds, 77 U.S. 308-316; O'Brien v. The People,216 Ill. 354; St. Louis, etc., R. R. Co. v. Lowdes, 138 Mo., 533; 7 Enc. Supreme Court Reports, p. 738.
As heretofore stated, our Superior Courts are courts of general jurisdiction, having power, original or appellate, to hear and determine all criminal causes and all civil causes in law or equity arising and existent within the State. Rhyne v. Lipscombe, 122 N.C. 650. And while these orders, when made pursuant to legislation by Congress on the subject presented, have been fully sustained and approved as controlling on the rights of the parties when and to the extent that the same properly apply (Missouri Pacific v. Ault, 256 U.S. 554; Northern Pacific R. R. v. NorthDakota, 250 U.S. 135), they do not, in our opinion, create or present here any jurisdictional question, but were only intended to afford immunity from suit when properly pleaded by the carriers and insisted on and maintained according to the course and practice of the court.
This order, No. 50, upon which appellant chiefly relies, clearly and in express terms contemplates that as a matter of jurisdiction the court may proceed to hear and determine the cause. A perusal of the Federal Control Acts will disclose that there were suits that could still be maintained against the carrier notwithstanding Federal control, and *Page 448 
prosecuted to the rendition of the judgment. Again, the President is authorized from time to time by order or contract to withdraw certain roads, or portions of roads, from the effect and operation of such control, 40 Statutes at Large, ch. 25, sec. 14, and the Court of necessity must determine whether a given action before it comes within the effect and operation of the order in question, and this of itself would recognize jurisdictional power to deal with the controversy. This view finds support, we think, in Mo. Pacific R. R. v. Ault, supra, wherein Associate JusticeBrandies, for the Court, in an opinion upholding the validity of order No. 50, and denying liability of the company for actions of this character refers to the fact that the immunity had been "seasonably claimed." And again, in the opinion, the conditions presented are likened to the case of a corporation in the hands of a receiver, where it is well understood that the appointment of a receiver does not have the effect at all of dissolving the corporation, and that the judgment of a court of competent jurisdiction obtained against the company will conclude both the corporation and the receiver, unless and until the same is set aside by motion in the cause or other direct proceedings. Pringer v. Woolworth, 90 N.Y. 502; Beach on Receivers, sec. 468. And it may be noted that in the recent cases of Supreme Court of the United States on this subject, wherein liability of the company was denied for injuries arising under and by reason of Federal control of the roads, Ault v. R. R., 256 U.S. 554; Western Union v.Boston, 256 U.S. 662; N.C. R. R. v. Lee, Admr., the immunity from liability was seasonably pled and was being insisted on and maintained according to course and practice of the Court, and in none of them so far as examined was there a suggestion of a want of jurisdiction in the Court to hear and determine the cause.
It is further contended that plaintiffs may not be allowed to further prosecute this suit because of the act of Congress terminating Federal control, 41 Statutes at Large, part 1, ch. 91, and which contains, among others, in sec. 206 (g), the provision that "No execution or process other than a judgment recovered by the United States shall be levied upon the property of any carrier where the cause of action on account of which the judgment was obtained grew out of the possession, use, control, or operation of the railroad or system of transportation by the President under Federal control, etc."
It might suffice to say in answer to this position that plaintiff thus far has not undertaken to levy any process or execution against the property of the defendant road, and his proceeding, therefore, does not come within the literal terms of the provision on which he here relies, but inasmuch as the answer contains averment that plaintiff is wrongfully seeking in this present suit to avoid the force and effect of the *Page 449 
statutory provision just quoted, we consider it pertinent to say that in our opinion the judgment sued on does not come within the inhibition as stated.
There are two of these inhibitions appearing in the Federal legislation on this subject, the first in ch. 25, sec. 10, Laws of 1918, 40 Statutes at Large, p. 456. This section, after providing in effect that carriers while under Federal control were subject to all laws and liabilities of carriers, and that actions might be brought against them and judgments recovered "as now provided by law," closes with the provision: "But no process, mesne or final, shall be levied against any property under such Federal control."
This provision was clearly inserted to protect the properties taken over from physical interference at the instance of creditors or third persons, and as necessary to the efficient user of the roads by the Government in the successful prosecution of the war, and from its terms and purpose would cease when such necessity no longer existed and the governmental control had lawfully terminated.
The second inhibition, which is here pleaded and relied upon by defendant, appears in the statute referred to terminating governmental control of the roads, 41 Statutes at Large, ch. 91. That statute, after providing, in sec. 200, that "On and after 1 March, 1920, the President shall relinquish the possession and control of the railroads taken over by the Government, and cease the use and operation thereof," in sec. 206, clause A, provides in effect that actions at law, suits in equity, and proceeding in admiralty based on causes of action growing out of Federal control, may be brought against an agent to be appointed by the President with the limitation that such suits, etc., should be brought not later than two years from the passage of the act. Clause B directs that process in these actions may be served on any agent or officer of the carrier or on some officer or agent to be designated by the President. Clause C provides for prosecution of claims for reparation to the carrier before the Interstate Commerce Commission by reason of any unreasonable or unjust rates, etc., enforced to the carrier's prejudice during such Federal control. Clause D, that actions, suits, proceedings and reparations above described, pending at the termination of Federal control, may be prosecuted to final judgment by substituting the agent designated by the President as party. Clause E provides for payment of such judgment out of the revolving fund created by the act. Clause G, heretofore quoted, prohibits the levy of execution or other process against the property of the carrier when the cause of action, etc., grew out of possession and control of the roads by the President.
From a perusal of these sections of the act, and a proper consideration of its terms and purpose, we are of opinion that this second inhibition *Page 450 
applies, and was intended to apply to the judgments provided for by the act itself, or, at most, to these and other judgments for such causes of action which had been permitted and obtained against the Director General under other and cognate Federal legislation. The first inhibition, as stated, being to protect the roads from physical interference by third persons, creditors, or other, while in possession and control of the Government, and the second to protect the carriers in the possession and control of their own roads from physical interference by reason of any actions or judgments provided for and allowed by the Government, but this legislation, in our view, was never intended to protect the carriers from judgments in independent suits by claimants where they have failed to plead or properly insist on the immunity from liability which had been provided for their protection. The Government has made provision by its legislation to protect the carriers from molestation by reason of any judgments it has authorized and provided for, but it has not undertaken, as guardian ad litem, to avoid or destroy the force and effect of independent judgments against which the carrier has neglected or failed to interpose his proper defenses.
Plaintiff, then, holding a final judgment of a court of competent jurisdiction for $2,500, unpaid and unchallenged by appeal or any direct proceedings, is entitled to sue on the same, regardless of his right to issue execution thereon, the protection in this jurisdiction against persistent and harassing litigation of this character being a statutory provision that no such action shall be instituted more than once. C. S., 437601; 2d Black on Judgments, sec. 958; 23 Cyc., 1502. On the entire record we are of opinion that his Honor made correct decision in sustaining plaintiff's demurrer to the answer, and his judgment to that effect is
Affirmed.